IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:14-cv-103 (WOB-CJS)

SAMUEL TSITEY, ET AL.                                    PLAINTIFFS

VS.                    MEMORANDUM OPINION AND ORDER

ASPEN NURSING SERVICES, INC.                              DEFENDANT

This is a putative collective action brought by Samuel Tsitey, Bennard Oteng, and Ama Mills[1] on behalf of themselves and all others similarly situated pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 216(b). Plaintiffs allege that Aspen Nursing Services, Inc. ("Aspen") did not properly compensate its employees working in the position of Personal Support Assistant ("PSA") for normal and overtime hours worked and also that Aspen unilaterally altered its employees' time sheets.

This matter is currently before the Court on plaintiffs' motion for final certification (Doc. 58).

The Court heard oral argument on this motion on Tuesday, October 11, 2016. Edward Cooley, Michael Ryan Robey, and Nicole Iuliano represented the plaintiffs. Kevin Morris represented the defendant. Official court reporter Joan Averdick recorded the proceedings.

---

[1] In addition to these original three plaintiffs, sixty-eight other individuals have filed consents to join this collective action.

Having heard the parties, the Court now issues the following Memorandum Opinion and Order.

### *Factual and Procedural Background*

Defendant, Aspen Nursing Services, Inc. ("Aspen"), is a private, for-profit company that provides assisted-living homes for individuals with developmental disabilities. Aspen operates homes in Kentucky, including ones in Florence, Louisville, Lexington, Frankfort, Somerset and Pikeville. Each assisted living home has three bedrooms and two or three residents.

Plaintiffs were or are employed by Aspen as "Personal Support Assistants" ("PSAs"). PSAs work and sleep in the assisted living homes and are responsible for the care of the residents, including cooking, feeding, administering medications, supervising, cleaning, and other general and health-related tasks.

PSAs work seven days a week and are scheduled to have the hours of 8:00 a.m. to 4:00 p.m. off from Monday to Friday. During this time, the residents of the homes are usually taken to day programs or activities by a charter service that picks up the residents and brings them back at the end of the day.

The assisted living homes are divided into "awake homes" and "sleep homes." "Awake homes" are those in which the residents have more severe disabilities and require more attention and care from the PSA, including during the night. "Sleep homes" are those in which the residents do not have special care instructions

requiring constant or scheduled night-time monitoring. Plaintiffs here all worked or work in "sleep homes."

Plaintiffs filed this action on May 28, 2014, alleging that Aspen failed to pay them the full amount of hourly and overtime wages required to be paid under law. Specifically, plaintiffs allege that when residents do not attend their day activities due to sickness, weather, or other reasons, the PSA who lives in the resident's home is forced to take care of the resident during their "off" time and is not compensated for the work.

Aspen asserts that, in such situations, the PSA's paid eight hours of sleep time becomes unpaid time. Plaintiffs argue, however, that does not remedy the situation because PSAs regularly work during the night due to the needs of residents.

Third, plaintiffs allege that Aspen fails to compensate them for time spent in employer-mandated training.

Finally, plaintiffs allege that Aspen routinely alters PSAs' timesheets to reflect fewer hours worked than the employees submitted.

On May 6, 2015, this Court conditionally certified the "class,"[2] then consisting of forty-four (44) potential plaintiffs. (Doc. 34). The Court certified the class for only a two-year "look back" period, but noted that plaintiffs could proffer evidence at the final certification stage that would support use of the three-

---
[2] Of course, plaintiffs are not a "class" in the Rule 23 sense.

year limitations period applicable to willful violations of the FLSA.

Following notice to potential class members, additional plaintiffs opted in, and the class currently consists of seventy-one (71) individuals.

The parties conducted discovery, and plaintiffs now seek final certification of a collective action on the following claims for a three-year period:[3]

    Count 1:  Violation of Federal Wage and Overtime Payment Laws

    Count 3:  Violation of Proper Payment during Employer-Designated Sleep Time

    Count 6:  Violation of Proper Payment for Employer-Mandated Training

    Count 7:  Willful Violation of Court Order and Wage Laws[4]

    Count 8:  Fraud (regarding altered time sheets)

    Count 9:  Promissory Estoppel

Plaintiffs' motion for final certification is now ripe for resolution.

---

[3] Plaintiffs are not pursuing Counts 4 and 5 of their complaint. Plaintiffs previously conceded that they cannot maintain Count 2 of the complaint. (Doc. 34 at 10).

[4] Plaintiffs' seventh cause of action alleges that Aspen has willfully violated an order of the Western District of Kentucky in No. 3:10-cv-654, *Solis v. Aspen Nursing Services, Inc.* That court permanently enjoined Aspen from further violations of the FLSA, including (1) paying its employees less than the federal minimum hourly rate, (2) paying its employees less than time-and-a-half wages for each hour over forty hours worked in a week, and (3) failing to keep accurate employment records.

## *Analysis*

### A. <u>Legal Framework</u>

"Congress passed the FLSA with broad remedial intent to address unfair method[s] of competition in commerce that cause labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." *Monroe v. FTS USA, LLC*, 815 F.3d 1000, 1008 (6th Cir. 2016) (internal quotations and citations omitted). Thus, the "provisions of the statute are remedial and humanitarian in purpose, and must not be interpreted or applied in a narrow, grudging manner." *Id.*

The FLSA provides a private cause of action against an employer "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Two requirements must be met for a collective FLSA action: 1) the plaintiffs must actually be "similarly situated," and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action. *Id.*

Courts generally follow a two-step process for certification. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). The first step is conditional certification at the beginning of discovery, which requires only a modest factual showing that the opt-in plaintiffs hold positions similar to the named plaintiffs. *Id.* at 546-47.

Following discovery, "trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated." *Id.* at 547. "The lead plaintiffs bear the burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiffs." *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) (citation omitted), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

In *O'Brien*, the Sixth Circuit adopted a three-factor test to determine whether employees are similarly situated for FLSA purposes. The court considers: 1) the factual and employment settings of the individual plaintiffs; 2) the different defenses to which the plaintiffs may be subject on an individual basis; and 3) the degree of fairness and procedural impact of certifying the action as a collective action. *Id.*

The *O'Brien* court stated that showing a "unified policy" of violations is not required. *Id.* Rather, employees who "suffer from a single, FLSA-violating policy" or whose "claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct," are similarly situated. *Id.* at 584-85.

Two additional principles apply to this analysis. First, the "similarly situated" FLSA requirement is less stringent than Rule 23(b)(3)'s requirement that common questions predominate for a class to be certified. *Id.* (noting that "[w]hile Congress could

have imported the more stringent criteria for class certification under Fed. R. Civ. P. 23, it has not done so in the FLSA").

Second, in resolving the certification issue, the court does not consider the merits of the plaintiffs' FLSA claims. *Frye v. Baptist Mem. Hosp., Inc.*, 495 F. App'x 669, 674 (6th Cir. 2012).

### 1. Factual and Employment Settings

This first factor, the factual and employment settings of the individual plaintiffs, "considers, to the extent they are relevant to the case, the plaintiffs' job duties, geographic locations, employer supervision, and compensation." *Monroe v. FTS USA, LLC*, 815 F.3d 1000, 1011 (6th Cir. 2016) (internal quotations and citations omitted).

Here, plaintiffs all held the same position — PSA — and they worked in the same setting, the assisted living homes occupied by two to three special needs residents. Plaintiffs also all worked in "sleep" homes, and they were subject to the same company policies regarding compensation. Further, they all worked or work in Kentucky, a region overseen by Jenni Rolfes, Aspen's Executive Director.

Moreover, plaintiffs' claims are premised on the same three allegedly unlawful company-wide practices: (1) requiring PSAs to work during their "off" hours of 8 to 4, but not paying them for that time; (2) then, in such situations, designating their sleep time as unpaid, even though PSAs routinely have to get up during

the night to assist residents; and (3) failing to pay PSAs for time spent attending training sessions.

Aspen contends that plaintiffs are not similarly situated due to the individualized needs of the residents of the homes where plaintiffs worked, arguing that an separate analysis would be required to determine whether each plaintiff suffered an FLSA violation. The Sixth Circuit, however, has rejected this type of argument.

For example, in *Monroe*, the Sixth Circuit held that plaintiffs — technicians for a cable television contractor — were similarly situated for FLSA purposes, notwithstanding that they worked in five different states under different managers and had different types and amounts of uncompensated time. *Monroe*, 815 F.3d at 1011-12. The Court noted that the FLSA "similarly situated" analysis "does not descend to such a level of granularity," and that the technicians claims "are unified by common theories: that FTS executives implemented a single, company-wide-time-shaving policy to force all technicians — either through direct orders or pressure and regardless of location or supervisor — to underreport overtime hours worked on their time sheets." *Id.* at 1013.

In so holding, the *Monroe* court relied on *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). There, an FLSA collective action was brought by former employees of two McDonald's franchises who alleged that they were

required to work "off the clock" and that defendants altered their time records. Following discovery, the district court decertified the class, reasoning that an extensive individualized analysis would be required to determine whether FLSA violations had occurred. The opt-in plaintiffs appealed.

The Sixth Circuit held that the district court had applied an unduly restrictive view of the FLSA's similarly situated requirement, implicitly and improperly using a Rule 23-type analysis:

> We do not purport to create comprehensive criteria for informing the similarly-situated analysis. But in this case, the plaintiffs were similarly situated, because their claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct. The claims were unified so, because plaintiffs articulated two common means by which they were allegedly cheated: forcing employees to work off the clock and improperly editing time-sheets. We do not mean to require that all collective actions under § 216(b) be unified by common theories of defendants' statutory violations; however, this is one situation where a group of employees is similarly situated.

*Id.* at 585.[5]

Under both *Monroe* and *O'Brien*, plaintiffs have clearly shown that their employment settings were sufficiently similarly so as to weigh in favor of final certification.

Two cases cited by Aspen are factually distinguishable. In *Frye v. Baptist Mem. Hosp.*, 495 F. App'x 669 (6th Cir.

---

[5] The Court ultimately affirmed the decertification, however, because the only remaining pot-in plaintiff had not alleged violations based on the above two common theories. *Id.* at 586.

2012), the Sixth Circuit held that the district court did not abuse its discretion in decertifying a collective FLSA action brought by employees of a hospital. There, however, there was no common theory of an FLSA violation, and the plaintiffs held different jobs, worked in different departments, and were subject to different compensation reporting procedures. *Id.* at 673.

Similarly, in *Creely v. HCR Manorcare*, 920 F. Supp.2d 846 (N.D. Ohio 2013), the Court denied the plaintiffs' motion for final certification in an FLSA action brought by employees of a company that operated short and long-term care facilities. However, the opt-in plaintiffs occupied various positions including registered nurses, licensed practical nurses, certified nursing assistants, and admissions coordinators at different facilities across the country. *Id.* at 850. Further, discovery revealed that the allegedly unlawful policy was implemented in a decentralized manner. *Id.* at 853-54.

Given the different factual showing plaintiffs have made here, neither *Frye* nor *Creely* supports Aspen's opposition to final certification.

### 1. Individualized Defenses

Aspen devotes almost none of its opposition to this factor of the *O'Brien* test. It does assert that each plaintiff's credibility as to the amount of sleep interruptions they experienced would be

at issue, and that this dictates against the case proceeding as a collective action.

The Sixth Circuit rejected an almost identical argument in *Monroe*. The employer there argued that "they must be allowed to raise separate defenses by examining each individual plaintiff on the number of unrecorded hours they worked, but that they were denied that right by the allowance of representative testimony and an estimated-average approach." *Monroe*, 815 F.3d at 1013. The Sixth Circuit stated: "Several circuits, including our own, hold that individualized defenses alone do not warrant decertification where sufficient common issues or job traits otherwise permit collective litigation." *Id.*

That is exactly the case here, where all plaintiffs held the same position, were subject to the same timekeeping and compensation policies, and assert common theories of FLSA violations.

Moreover, Aspen asserts in its brief that all plaintiffs would be subject to a defense under 29 C.F.R. § 785.22, an FLSA regulation that permits an employer, upon express or implied agreement, to exclude 8 hours of sleep time from employees "on duty" for employees "on duty" for 24 hours or more. Aspen's employee handbook incorporates this principle, and Aspen states that it intends to invoke this defense when the merits of plaintiffs' claims are considered by the Court.

Thus, contrary to any individualized defenses, a key component of Aspen's defense — 29 C.F.R. § 785.22 — will be applicable to every member of the proposed collective class.

Therefore, this second factor also supports the propriety of final certification.

### 2. Fairness and Procedural Impact

This third factor also supports final certification. As the Sixth Circuit stated in *Monroe*:

> This case satisfies the policy behind FLSA collective actions and Congress's remedial intent by consolidating many small, related claims of employees for which proceeding individually would be too costly to be practical.
>
> . . .
>
> Because all [employees] allege a common FLSA-violating policy, [t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact.

*Monroe*, 815 F.3d at 1014 (citation and internal quotations omitted).

The same rationale applies here, where seventy-one employees allege common theories of FLSA violations, and it is unlikely that they would have the resources to proceed individually were certification denied.

Therefore, the Court concludes that final certification of this matter as a collective action is appropriate.

Thus, having reviewed this matter, and the Court being sufficiently advised,

**IT IS ORDERED** that:

(1) Plaintiffs' motion for final class certification (Doc. 58) be, and is hereby, **GRANTED**; and

(2) The parties shall confer and file and proposed discovery and dispositive motion plan **within fifteen (15) days of entry of this Order**.

This 13th day of October, 2016.



Signed By:
*William O. Bertelsman* WOB
United States District Judge

TIC: 33 min.